**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

DONNA JOHNSON,

Plaintiff,

-vs-

DECISION & ORDER

XEROX CORPORATION,                                    08-CV-6565-CJS-MWP

Defendant.

_____

**APPEARANCES**

For Plaintiff:                          Christina A. Agola, Esq.
                                        2100 First Federal Plaza
                                        28 East Main Street
                                        Rochester, NY 14614
                                        (585) 262-3320

For Defendant:                          Margaret A. Clemens, Esq.
                                        Patrick James Simpson, Esq.
                                        Littler Mendelson, P.C.
                                        400 Linden Oaks Suite 110
                                        Rochester, NY 14625
                                        (585) 203-3400

**INTRODUCTION**

**Siragusa, J.** This employment discrimination case is before the Court on

Defendant's motion (Docket No. 19) for summary judgment. Plaintiff's complaint alleges

violations of Title VII of the Civil Rights Act of 1964 and the New York State Human

Rights Law. Following its review of the papers in support of and in opposition to the

application, and after hearing oral argument, for the reasons stated below, the Court grants the motion.

## FACTUAL BACKGROUND

Defendant Xerox Corporation ("Xerox") filed with its summary judgment motion a statement of facts as required by Western District of New York Local Rule of Civil Procedure 56.1. Counsel for Plaintiff Donna Johnson ("Johnson")  filed a "separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." W.D.N.Y. Loc. R. Civ. P. 56.1. In addition, Plaintiff's counsel filed what she entitled as  "Local Rule 56.1 Counter-Statement." (Docket No. 24-2.) Xerox has asked the Court to either strike, or disregard, Plaintiff's Counter-Statement as not authorized under the local rules, and as unnecessarily lengthening, rather than meeting the goal of the Local Rule, which is to streamline the review process.

Local Rule 56.1 makes no provision for the filing of a counter-statement of facts. The Rule was designed to highlight any issues of fact to quickly allow the Court to determine whether summary judgment is precluded. Plaintiff's counter-statement is, therefore, unnecessary and only serves to complicate the summary judgment process. Accordingly, the Court will not consider it in deciding this motion. Based on Xerox's statement of facts, and Plaintiff's contentions concerning them, the following facts are presented on this motion.

Xerox has well-established policies and procedures prohibiting sexual harassment in the workplace. Such policies include its Human Resources Manual, Policy Number HR 201.3, "Equal Opportunity/Affirmative Action and Non-Discrimination Harassment Policy"

("HR 201.3"), as well Xerox's Code of Business Conduct. Both the Code of Business Conduct and HR 201.3 are designed to further Xerox's policies on harassment. Xerox's HR 201.3, for example, informs employees that Xerox "will not tolerate any form of harassment based on ... sex ... or any other basis protected by applicable laws" and it provides a detailed complaint procedure and investigation process for employees to utilize if they believe they have been harassed.

Xerox's Code of Business Conduct also informs employees that employee "violence, threats and harassment are always strictly prohibited," that Xerox "does not tolerate any form of harassment" towards its employees, that Xerox "will investigate allegations of harassment promptly" and when appropriate "take immediate, decisive and appropriate corrective action" and that employees should "notify [their] supervisor, manager or IR[1] manager immediately" if they become aware of such harassment.

Xerox requires that all its employees, including union employees, attend periodic training on its Code of Business Conduct and non-harassment policies. Plaintiff, who began her employment with Xerox in 1989, attended such training sessions annually for at least ten years.

Plaintiff is a member of Local 14A, Rochester Regional Joint Board Xerographic Division UNITEHERE! ("UNITEHERE!"). As a member of UNITEHERE!, the terms and conditions of plaintiff's employment relationship with Xerox are governed by the Collective Bargaining Agreement ("CBA") between Xerox and UNITEHERE!. (Vatter Bruder-Decl. 117 and its Exhibit D). The CBA describes Xerox's and the union's

---

[1]The term "IR" refers to Xerox's Industrial Relations representatives, who provide a variety of services to the unionized workforce.

prohibition against discrimination and their support of equal employment opportunity, and it contains a grievance procedure for members to utilize to complain about, among other things, any allegations of discrimination.

In January of 2007, plaintiff was assigned temporary duties as a Cleaner in the Site and Facilities Services department in Xerox's Webster, New York manufacturing complex. On January 11, 2007, plaintiff and Bruce Dibble ("Dibble"), a co-worker who was training Plaintiff, went into a men's restroom for the purposes of cleaning it. (Clemens Decl., Exhibit A at pp. 35-36). They had blocked the door to the restroom with a cleaning cart and put up a sign that said "Closed for Cleaning" in front of the cart. They were then were standing by the sinks because Dibble was showing plaintiff where the soaps and paper towels were located. As Plaintiff and Dibble stood in front of the sinks, a man came into to restroom, went past the stalls, and proceeded to urinate at a urinal. (*Id.* at p.37-39). He stated to Plaintiff and Dibble that in Europe, cleaners just clean around him.

On January 15, 2007, Plaintiff called her supervisor, James Henning, and she advised him at that time about the January 11, 2007 incident. Plaintiff was immediately assigned to work in another building and no further incidents occurred.[2] Plaintiff testified that the only incident upon which her claim is based is the January 11, 2007 incident

---

[2]Although Plaintiff contests this statement, and the statement in paragraph 12, she relates only that she was moved to Building 105 and required to clean men's bathrooms, then to Building 205, and again required to enter men's bathrooms to retrieve the trash.

detailed above. Plaintiff filed an EEOC charge relating to this single incident and the EEOC issued an notice of dismissal and statement of rights.[3]

Plaintiff has submitted affidavits from herself, Dibble, Barbara LaFond ("LaFond") and Tammy Ciulla-Noto ("Ciulla-Noto"). (Pl.'s Vol. III.) In her affidavit, Plaintiff relates that the incident at issue occurred in Building 304 and that the man who urinated in the men's room while she and Dibble were there cleaning was Richard Asahi ("Asahi"). (Johnson Aff. ¶¶ 5–14.) Plaintiff relates that she felt, "humiliated and demeaned by Asahi's degrading conduct. Just because I am [a] cleaner does not mean I am invisible or a 'nobody.' I am an educated woman." (*Id*. ¶ 19.) From Xerox's response to her EEOC complaint, Plaintiff learned that Asahi was disciplined for the incident. (*Id*. ¶ 43.) In her affidavit, Plaintiff also gave an account of an incident in 1992, in Building 214, where "a male Xerox employee stuck his tongue out at me and told me that he wanted to 'do' me," and "[i]n or about 2000, another male Xerox employee came up to me, pushed his body against my buttocks and asked me if I 'played.'" (*Id*. ¶¶ 71–72.)

LaFond related that while cleaning one of the stalls in a men's bathroom in Building 208, on March 21, 2007, a man entered the bathroom, despite the sign she had put up stating that the bathroom was closed for cleaning, and unzipped his pants in front of a urinal. She confronted him, then left the room and reported the incident to her supervisor. (LaFond Aff., at 1.)

Ciulla-Noto stated in her affidavit that she cleaned men's bathrooms at Xerox Square, which is in the City of Rochester, not Webster, from in or about June 2009, until

---

[3]Although Plaintiff contests this statement, she does not contend it is untrue.

November 2009. She indicated that, during that time, male workers came into the bathroom and exposed their genitals and urinated in her presence.

## STANDARDS OF LAW

### Federal Rule of Civil Procedure 56

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).    "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the

fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

***Civil Rights Act of 1964 and New York Human Rights Law***

Title VII of the Civil Rights Act of 1964, as amended, "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'"  *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations omitted), *abrogated on other grounds by Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199 (2nd Cir. 2006).

Generally, "claims brought under New York State Human Rights Law are analytically identical to claims brought under Title VII." *Torres v. Pisano*, 116 F.3d 625, 629, n. 1 (2d Cir. 1997), *cert. den.*, 522 U.S. 997 (1997). Consequently, unless otherwise notes, references to Title VII below are also intended to refer to the NYHRL.

***Hostile Environment Discrimination***

Xerox maintains that it is entitled to summary judgment on Plaintiff's hostile environment claims, and the Court agrees.  To establish a hostile work environment claim, a plaintiff must show that

> the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. Proving such a claim involves showing both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.
>
> In addition, the plaintiff must show that a specific basis exists for imputing the objectionable conduct to the employer. Where an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or

reasonably should have known) about the harassment but failed to take appropriate remedial action.[4]   According to two 1998 Supreme Court cases, *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998), this inquiry differs where the harassment is attributed not to non-supervisory co-workers but to a supervisor with immediate or successively higher authority over the employee. *Burlington Indus.*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. In that circumstance, a court looks first to whether the supervisor's behavior culminated in a tangible employment action against the employee.  If it did, the employer will, ipso facto, be vicariously liable.   If no such tangible employment action is present, however, an employer will still be liable for a hostile work environment created by a supervisor unless the employer successfully establishes an affirmative defense.   That defense requires the employer to show that (a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Fairbrother v. Morrison*, 412 F.3d 39, 48-49 (2d Cir. 2005) (citations and internal

quotation marks omitted), *abrogated on other grounds by Kessler v. Westchester County*

*Dept. of Soc. Servs.*, 461 F.3d 199 (2nd Cir. 2006).

## ANALYSIS

With regard to Plaintiff's allegations of a hostile work environment, the Court notes

that in *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993), the Supreme Court stated:

whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while

---

[4]  *See also, Murray v. New York University College of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) ("[E]mployer liability for a hostile environment created by coworkers, or by a low-level supervisor who does not rely on his supervisory authority in carrying out the harassment, attaches only when the employer has either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.") (citation and internal quotation mark omitted).

psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

The sole incident related in Plaintiff's complaint is the one that occurred on January 11, 2007: A man came into to the restroom Plaintiff and a male co-worker, Bruce Dibble, were cleaning. Plaintiff related at her deposition what happened next:

> And I was shocked. Bruce was shocked. I didn't—I didn't think he was going to do it. Wait at least until I get out. And he unzips his pants and he pulls his privates out and proceeds to urinate. And I says, "Oh, my God." And he says to me, "Well," he says, "in Europe cleaning ladies just clean around me." And on my way out I'm screaming at him, "This is America."

(Johnson Dep., at 39.) Subsequently, Plaintiff was moved from the building where the incident occurred, and worked in two other buildings. This is the only incident on which Plaintiff has based her claim.[5] (Johnson Dep., at 71–72, 117–18.) The man is not identified as a supervisor.

An isolated incident of harassment by a non-supervisor, by itself, is insufficient to constitute a hostile work environment, unless that incident is sufficiently serious. *See Sardina v. UPS*, 254 Fed. Appx. 108, 110 (2d Cir. 2007). Here, Plaintiff does not allege any facts showing that the incident was physically threatening or humiliating.[6] The urinating man did not intentionally expose himself directly to her, but, rather, was indifferent to her presence by the sinks while he was at the urinals. Nothing in the facts

---

[5] Plaintiff has submitted affidavits from other female cleaners who experienced incidents

[6] The district court in *Dottolo v. Byrne Dairy, Inc.*, No. 5:08-CV-0390 (GTS/ATB), 2010 U.S. Dist. LEXIS 62132, 14 (N.D.N.Y. Jun. 22, 2010) (citations omitted), provided examples from other cases in this Circuit where a single act was held sufficiently serious to warrant trail: "(1) an employee being subjected to sexual assault by a co-worker, and (2) a female firefighter being accused of "gain[ing] her office of lieutenant by performing fellatio," where the accusation came from her co-worker, "at length, loudly, and in a large group in which [the female firefighter] was the only female and many of the men were her subordinates," creating a justified fear that she would be left in peril at fire scenes."

before the Court shows that this single incident of inappropriate behavior on the part of the man in the restroom was ever repeated in Plaintiff's presence. Further, the man's comment, that in Europe, cleaners just cleaned around him, suggests an "ordinary tribulation[] of the workplace," and not "sexual remarks, innuendoes, ridicule, and intimidation…." *Vera v. McHugh*, 622 F.3d 17, 27 (1st Cir. 2010). Title VII has not created a general civility code for the American workplace. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998); *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004).

With regard to the Court's consideration of the other women's experiences included in Plaintiff's responding papers, the Court is aware of the holding in *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997):

> Evidence of the harassment of women other than Perry, if part of a pervasive or continuing pattern of conduct, was surely relevant to show the existence of a hostile environment at Ethan Allen and could have been found probative of the company's notice of that environment within the period that the district court viewed as relevant.

However, although the Court considers that the evidence submitted by LaFond is relevant and would be admissible at a trial, the statements by Plaintiff concerning the alleged incidents in 1992 and 2000, as well as the evidence submitted by Ciulla-Noto, is too distant in time and, in the case Ciulla-Noto, geography, to be relevant to Plaintiff's case.

This matter  is similar to *Duguie v. City of Burlington*, 161 Fed. Appx. 177 (2d Cir. 2006), in which female cleaners sued because several times a male police officer entered the locker rooms they were cleaning and undressed or urinated while the cleaners were still present. The district court determined that the few isolated incidents

did not amount to the creation of a hostile work environment. *Id*. As was the case in *Duguie*, the one isolated incident of improper behavior on the part of one man does not constitute a hostile work environment. Therefore, the Court determines that Xerox is entitled to judgment on Plaintiff's hostile environment sexual harassment claim.

In addition to her failure to show a sufficiently severe act, or a working environment permeated with discriminatory abuse, Plaintiff has failed to impute the actions of Asahi to Xerox. An employer "is vicariously liable for actionable discrimination caused by a supervisor…," *Faragher v. City of Boca Raton*, 524 U.S. 775, 780 (1998), and has an affirmative defense available to it if the employer can show, "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998). As stated above, the man who urinated in the men's room is not identified as a supervisor.

If Asahi was a co-worker, then Xerox would be liable only if his conduct could be imputed to Xerox. In *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995), the Second Circuit held that,

> where a low-level supervisor does not rely on his supervisory authority to carry out the harassment, or a co-employee of the plaintiff is the alleged harasser, an employer will generally not be liable unless "'the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it.'"

*Tomka*, 66 F.3d at 1305 (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, quoting *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 58, 63 (2d Cir. 1992)). Plaintiff has not shown that Xerox knew, before the incident that the man was likely to harass

-12-

Plaintiff, and Xerox has shown that it provided a reasonable avenue of complaint, and acted promptly to prevent further incidents once Plaintiff reported the matter. Therefore, even if the one act had been sufficiently serious enough to constitute a hostile working environment, the man's act cannot be imputed to Xerox.

## CONCLUSION

For the foregoing reasons, Xerox's motion (Docket No. 19) is granted. The Clerk is directed to enter summary judgment for Defendant Xerox Corporation and close this case.

IT IS SO ORDERED.

Dated:   March 17, 2011
            Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J.  SIRAGUSA
United States District Judge